**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 24-cv-01281-NYW-STV

LOIS ALVARADO, and
MILO ALVARADO,

      Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY d/b/a ALLSTATE,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on four Motions:

(1)    Defendant Allstate's Motion to Exclude Plaintiffs' Expert Mr. John Kezer (the "Motion to Exclude Kezer"), [Doc. 57];

(2)    Defendant's Motion for Leave to Amend Answer to Add Affirmative Defense (the "Motion to Amend Answer"), [Doc. 58];

(3)    Allstate Insurance Company's Motion for Summary Judgment (the "Motion for Summary Judgment"), [Doc. 62]; and

(4)    Plaintiffs' Motion to Exclude Defendants' Expert Mr. Franklin Patterson (the "Motion to Exclude Patterson"), [Doc. 63].

The Court has reviewed the Motions and concludes that oral argument would not materially assist in their resolution. For the reasons set forth below, the Motion to Amend Answer is **DENIED**; the Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**; the Motion to Exclude Kezer is **GRANTED in part** and **DENIED in part**; and the Motion to Exclude Patterson is **DENIED**.

**BACKGROUND**

Plaintiffs Lois Alvarado and Milo Alvarado (together, "Plaintiffs" or "the Alvarados") sued their insurer, Allstate Fire and Casualty Insurance Company ("Defendant" or "Allstate"), after Allstate denied their claim for vehicle damages arising out of an automobile collision involving their daughter, Brianna Alvarado.  *See* [Doc. 5].  Plaintiffs allege that Allstate erroneously denied coverage after wrongly concluding that Brianna[1] was not covered under the Alvarados' insurance policy.  [*Id.* at ¶¶ 35–36, 41].  Plaintiffs assert one breach of contract claim, one claim of unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116 (or "statutory bad faith"), and one claim of common law bad faith.  [*Id.* at ¶¶ 40–64].

Allstate filed its Answer on May 15, 2024, denying liability.  [Doc. 11].  The case proceeded through discovery, and discovery closed on October 31, 2025.  [Doc. 56].  Allstate now moves to amend its Answer to assert a new affirmative defense, [Doc. 58], and for summary judgment in its favor on all of Plaintiffs' claims, [Doc. 62].  Both sides have also moved to exclude a competing expert witness.  [Doc. 57; Doc. 63].  The Court addresses each Motion below.

I.      **Motion to Amend Answer**

A.      **Legal Standard**

When a party files a motion to amend after the expiration of the deadline to amend pleadings,[2] the Court considers the request under Rules 15 and 16 of the Federal Rules of Civil Procedure.  First, the Court determines whether the movant has demonstrated

---

[1] Because Brianna Alvarado and Plaintiffs share the same last name, for purposes of clarity, the Court sometimes refers to Brianna using only her first name.

[2] The deadline for amendment of pleadings was August 2, 2024.  [Doc. 18 at 9].

good cause to amend the Scheduling Order under Rule 16(b). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1242 (10th Cir. 2014). Then, the Court considers whether amendment is appropriate under Rule 15(a). *Id.*

Under Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (alteration in original) (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). This burden may be satisfied when a party learns of new information through discovery. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quotation omitted). The good cause standard requires the movant "to provide an adequate explanation for any delay." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (quotation omitted).

Rule 15(a) provides that leave to amend shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a). The Court may deny leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Whether to allow amendment is within the trial court's discretion. *Husky Ventures*, 911 F.3d at 1019.

### B. Analysis

Allstate moves to amend its Answer to raise, for the first time, a statute-of-limitations affirmative defense to Plaintiffs' bad faith claims. [Doc. 58]. "A bad faith breach of insurance contract claim is a tort claim governed by the two-year statute of limitations in [Colo. Rev. Stat. §] 13-80-102." *Cork v. Sentry Ins.*, 194 P.3d 422, 427 (Colo. App. 2008); *see also Wardcraft Homes, Inc. v. Emps. Mut. Cas. Co.*, 70 F. Supp. 3d 1198, 1213 (D. Colo. 2014) (recognizing that statutory bad faith claims "accrue in the same manner as [common law] bad faith claims") (collecting cases). "A bad faith cause of action accrues when both the nature of the injury and its causes are known or should be known through the exercise of reasonable diligence." *Cork*, 194 P.3d at 427.

Defendant argues that good cause exists to amend the Scheduling Order because "significant information relevant to a [statute-of-limitations] defense was not discovered until the Plaintiffs were deposed approximately 30 days ago." [Doc. 58 at 3]. The Motion to Amend Answer centers around handwritten notes taken by Ms. Alvarado contemporaneously with conversations with Allstate representatives. *See* [*id.* at 5–7]; *see also* [Doc. 58-1 (the notes)].[3] The notes state, in pertinent part, "Called David Murray on Brianna's Permit[.] [S]he got it on Apr. 16, 2019[.] Jeff didn't get to talk to David. But Jeff made it clear that Brianna still was not [covered] and Darian said you can't [file] a complaint against them." [Doc. 58-1 at 1].

---

[3] The first portion of the notes is dated "6-1-2020." [Doc. 58-1 at 1]. Defendant contends that the notes were taken in June 2021. [Doc. 58 at 5]; *but see* [*id.* at 6 (Defendant referencing the subject conversations as occurring in 2022)]. Because the subject collision did not occur until May 2021, *see* [Doc. 5 at ¶ 26], and because the notes reflect ongoing conversations that are otherwise dated as taken in the summer of 2021, [Doc. 58-1 at 1–2], the Court infers that the reference to 2020 may be in error. Either way, the Court's analysis of this issue remains the same.

Defendant argues that the import of these notes with respect to a potential statute-of-limitations defense was not known until the Alvarados were deposed in September 2025. [Doc. 58 at 5]. Specifically, in her deposition, Ms. Alvarado confirmed that she wrote the notes and stated that, in the summer of 2021, someone at Allstate "told her there was no coverage." [*Id.*]. And Mr. Alvarado stated in his deposition that he did not personally speak with Allstate representatives and instead relied on Ms. Alvarado to communicate with Allstate. [*Id.* at 6]. Allstate contends that this deposition testimony, "when combined with other information disclosed in discovery, including Allstate claim notes, indicates that Plaintiffs probably [k]new, or probably should have known, that Allstate was denying their claim for insurance benefits by at least July 30, 2021." [*Id.*]. Allstate does not identify the "other information disclosed in discovery" that it contends helps show, in combination with this deposition testimony, that Plaintiffs' bad faith claims accrued over two years before they filed this lawsuit. *See* [*id.*]. Nor does Allstate explain how its *own* claim notes were "disclosed" to it during discovery. *See* [*id.*].

Plaintiffs oppose Defendant's Motion to Amend Answer. They argue that the handwritten notes were disclosed in their initial disclosures, so Defendant has had access to them since June 2024. [Doc. 61 at 4]; *see also* [Doc. 61-1 at 4 (Plaintiffs' initial disclosures)]. They also point out that Allstate's own claim notes reflect that Allstate informed Ms. Alvarado of its position that there was no coverage in June 2021. [Doc. 61 at 4]; *see also* [Doc. 61-2 at 2 ("advised . . . at this time the claim was denied for the unlisted driver")]. Plaintiffs argue that the deposition testimony revealed no new information that excuses Defendant's 16-month delay in moving to amend its Answer. [Doc. 61 at 4–5]. In its reply brief, Allstate asserts that "what was not available in the

5

records already provided[] was what Lois Alvarado admitted in her deposition – she actually knew coverage was probably being denied, and she admits when she knew this." [Doc. 65 at 7–8].  Allstate also says that the identity of the notes' author was material new information.  [*Id.* at 8].

The Court agrees with Plaintiffs that Defendant has not demonstrated good cause to amend the Scheduling Order to extend the deadline for amendment of pleadings.  The notes, identified as "Plaintiff's [sic] Handwritten Notes," were disclosed to Defendant on June 28, 2024.  [Doc. 61-1 at 4].  At the very least, then, Defendant was on notice in June 2024 that one of the two Plaintiffs had written those notes.  That Ms. Alvarado confirmed at her deposition that she, and not her husband, authored the notes is immaterial to the analysis of when Plaintiffs knew or should have known that coverage was potentially being denied, given that the notes were always attributed to a "Plaintiff."

The notes clearly reflect that, in her communications with Allstate, Ms. Alvarado was told that "Brianna still was not [covered]."  [Doc. 58-1 at 1].  And Allstate's claim notes, which were presumably within its possession before this case was even filed, also reflect that Ms. Alvarado was informed in June 2021 that there was no coverage, as an Allstate representative noted that they had "advised" Ms. Alvarado "at this time the claim was denied for the unlisted driver," i.e., Brianna.  [Doc. 61-2 at 2].  If Allstate takes the position that Plaintiffs' bad faith claims accrued when Ms. Alvarado was told there was no coverage during her communications with Allstate,[4] then Allstate has had the information

---

[4] The Court makes no ruling as to when Plaintiffs knew or should have known of Allstate's alleged bad faith or when Plaintiffs' bad faith claims actually accrued.  Instead, the Court's holding is limited to a determination that Defendant has not established that it learned of any new information in the Alvarados' depositions that established, for the first time, the potential viability of a statute-of-limitations defense.

necessary to assert a statute-of-limitations defense since at least June of 2024, and potentially sooner. Because Allstate does not "provide an adequate explanation" for its 16-month delay in seeking leave to amend, *Husky Ventures*, 911 F.3d at 1020, it has not demonstrated good cause to amend the Scheduling Order, *see CEI Enters., Inc. v. Pro. Coating Techs., Inc.*, No. 1:21-cv-01212-MLG-LF, 2023 WL 6377375, at *3 (D.N.M. Sept. 29, 2023) (finding no good cause where the defendant "already knew about the facts necessary to have pled its proposed amended defenses and counterclaim with its initial Answer"). The Motion to Amend Answer is respectfully **DENIED**.[5]

## II.    Motion for Summary Judgment

### A.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

---

[5] A statute-of-limitations defense is an affirmative defense that may be waived when it is not timely asserted in a responsive pleading. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1169 n.16 (10th Cir. 2000); *Mitchell v. Rocky Mountain Cancer Ctrs., LLP*, 262 F.R.D. 575, 581 n.5 (D. Colo. 2009) (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174–75 (10th Cir. 1998)).

At summary judgment, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted).

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See id.* at 249; *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

### B.    Undisputed Material Facts

The following undisputed material facts are drawn from the summary judgment record.

1.    At all relevant times, Plaintiffs owned a vehicle that was covered by an automobile insurance policy issued by Allstate (the "Policy"). [Doc. 62 at ¶¶ 1–2, 4; Doc. 69 at 3 ¶¶ 1–2, 4;[6] Doc. 5 at ¶¶ 12, 14; Doc. 62-2 at 14:1–2].

---

[6] Plaintiffs originally responded to the Motion for Summary Judgment on December 12, 2025. [Doc. 67]. That same day, the Court ordered both Parties to supplement their recent filings to comply with this Court's Standing Order Regarding the Use of Generative Artificial Intelligence ("AI") in Court Filings. [Doc. 68]. Plaintiffs then re-filed their response on December 16, 2025 brief to include the AI Certification. [Doc. 69]. The Court cites to the December 16 filing as Plaintiffs' operative response brief.

2.      On May 30, 2021, Brianna Alvarado, Plaintiffs' daughter, was involved in a collision while driving the vehicle.  [Doc. 62 at ¶¶ 1, 3; Doc. 69 at 3 ¶¶ 1, 3; Doc. 5 at ¶ 26; Doc. 11 at ¶ 1; Doc. 62-2 at 7:23–8:5].[7]

3.      Brianna obtained her driver's license on June 1, 2020.  [Doc. 62 at ¶ 20; Doc. 69 at 5 ¶ 20; Doc. 62-8 at 5].

4.      From the time she was a newborn and through the date of the collision, Brianna resided at Plaintiffs' home.  [Doc. 62 at ¶ 5; Doc. 69 at 3 ¶ 5; Doc. 62-2 at 8:11–24].

5.      Brianna was not listed as a driver in the Policy; only Ms. Alvarado and Mr. Alvarado were listed as drivers.  [Doc. 62 at ¶ 8; Doc. 69 at 3 ¶ 8; Doc. 62-3 at 7].

6.      After the May 30 collision, Ms. Alvarado contacted Allstate and sought coverage for damage to the vehicle.  [Doc. 62 at ¶ 9; Doc. 69 at 3 ¶ 9; Doc. 5 at ¶ 27; Doc. 11 at ¶ 1].

7.      In February 2022, Allstate denied Plaintiffs' claim on the grounds that Brianna Alvarado was not listed in the Policy.  [Doc. 62 at ¶ 14; Doc. 69 at 4 ¶ 14; Doc. 62-6 at 2].

**C.      Analysis**

**1.      Breach of Contract Claim**

Allstate argues that it is entitled to summary judgment on Plaintiffs' breach of contract claim because (1) the claim is untimely based on Policy language requiring that causes of action concerning coverage be filed within one year of the date of the loss,

---

[7] The Parties agree that Brianna was involved in a separate collision in the vehicle on May 14, 2021, but they dispute whether the vehicle was damaged in that collision. [Doc. 62 at ¶ 18; Doc. 69 at 4 ¶ 18].

[Doc. 62 at 6]; (2) the Policy does not provide coverage for the loss, [*id.* at 10]; and (3) the claim fails because Plaintiffs have "no admissible evidence of the value of their property damage claim," [*id.* at 15 (emphasis omitted)].  Defendants' first argument is dispositive.

The Policy provides:

> **Action Against Us**
> No one may bring an action against **us** unless:
> 1.    there is full compliance with all policy terms; and
> 2.    the action is commenced within one year of the date the cause of action accrues.  However, if an action is in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a particular coverage that is shown on the Policy Declarations, such action must be commenced within the time period specified in the **Action Against Us** provision of that particular coverage.  If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

[Doc. 62-3 at 31 (underlined emphasis added)].  The Policy provides automobile coverage in "Part 3," titled "Protection Against Loss To The Auto."  [*Id.* at 22].  The Policy "add[s]" the following provision to "Part 3—Protection Against Loss To The Auto":

> **Action Against Us**
> No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Part 3—Protection Against Loss To The Auto**, unless there is full compliance with all policy terms and such action is commenced within one year after the date of loss.

[*Id.* at 34 (underlined emphasis added)].

Allstate contends that, pursuant to this Policy language, Plaintiffs were required to file their breach of contract claim within one year of the date of the loss, or May 30, 2022. [Doc. 62 at 7–9].  Plaintiffs respond that the limitations provision should not be enforced because it is "in conflict with Colorado public policy as [it is] unreasonable."  [Doc. 69 at

7].  Plaintiffs do not cite any particular legal principle or doctrine in support of this argument, *see* [*id.*], but the Court infers that Plaintiffs intend to argue that the Court should declare the Policy provision void because it is contrary to Colorado public policy.

Under Colorado law, "[i]nsurance provisions that violate public policy may be declared void and unenforceable."  *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1045 (Colo. 2011).  Whether an insurance policy provision violates public policy is a legal question that must be answered "based on the particular facts of the case."  *Del Valle v. Cal. Cas. Indem. Exch.*, 525 P.3d 689, 693 (Colo. App. 2022) (quotation omitted).  In determining whether insurance provisions are void as against public policy, courts consider "whether they attempt to 'dilute, condition, or limit statutorily mandated coverage.'"  *Bailey*, 255 P.3d at 1045 (quoting *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo. 1990)).  Importantly, "given Colorado's strong commitment to the freedom of contract, . . . '[t]he principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reason on which the doctrine rests.'"  *Countryman v. Farmers Ins. Exch.*, 865 F. Supp. 2d 1108, 1111 (D. Colo. 2012) (first citing *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 662 (Colo. 2011), then quoting *Bailey*, 255 P.3d at 1045), *aff'd*, 545 F. App'x 762 (10th Cir. 2013).

Plaintiffs argue that the limitations provision is void as against public policy because (1) State Farm did not issue a denial letter until ten months after the collision, so requiring a lawsuit to be filed within one year of the loss "is unreasonable given the realities of filing and pursuing claims today," [Doc. 69 at 7]; (2) the default statutory limitations period is "[three] times greater than that allowed by Defendant[] in its Policy,"

11

[*id.*]; (3) the one-year limitation provision is designed to "prevent an insured from pursuing a claim for coverage . . . in the courts," [*id.* at 8], and (4) the provision is "in direct conflict with the intent of the legislature for insurance practices that are in good faith," [*id.* at 8–9].

The Court is respectfully unpersuaded by Plaintiffs' arguments.  Although Colorado law sets a default three-year statute of limitations for contract actions, *see* Colo. Rev. Stat. § 13-80-101(1)(a), Colorado courts have long recognized that "a contractual limitations period may override a statutory limitations period so long as such contractual clauses are not 'prohibited by statute,'" *Brookshire Downs at Heatherridge Condo. Ass'n, Inc. v. Owners Ins. Co.*, 324 F. Supp. 3d 1201, 1203 (D. Colo. 2018) (quoting *Grant Fam. Farms, Inc. v. Colo. Farm Bureau Mut. Ins. Co.*, 155 P.3d 537, 538 (Colo. App. 2006)); *see also Grant Fam. Farms*, 155 P.3d at 539 ("[P]arties to a contract may require that actions founded on the contract be commenced within a shorter period of time than that prescribed by the applicable statute of limitations.").  As the Colorado Court of Appeals has recognized, "Section 13-80-101(1)(a) contains no language prohibiting contractually shortening the three-year limitations period."  *Grant Fam. Farms*, 155 P.3d at 539.

Nor is the Court persuaded that the Policy provision conflicts with the Colorado General Assembly's intent, as framed by Plaintiffs, to "promote the public welfare by regulating insurance to the end that insurance services be actuated by good faith and keep, observe and practice the principles of law and equity in all matters," *see* [Doc. 69 at 8], or that it contravenes the "public policy of . . . favor[ing] access to the courts and timely resolution of claims," as Plaintiffs suggest, [*id.*].  A shortening of the period in which an insured may sue her insurer for breach of contract does not inherently undermine the requirement that insurance providers act in good faith when dealing with their insureds.

12

That the provision at issue here "may not *further* the legislative intent of a statute does not render the . . . limitation void; instead, the [limitation] is void only if it *contravenes* public policy." *Countryman*, 865 F. Supp. 2d at 1111.

While the Policy's limitations provision necessarily shortens the window in which an insured may file a lawsuit, the same is true for *all* contractual provisions that shorten the default limitations period. If this were enough to declare the provision void as against public policy, then these contractual provisions would simply *never* be enforced. These provisions, however, are regularly enforced in Colorado courts. *See, e.g.*, *Midtown Invs., LP v. Auto-Owners Ins. Co.*, No. 20-cv-01594-PAB-STV, 2021 WL 857732, at *2–5 (D. Colo. Mar. 8, 2021) (enforcing two-year contractual limitations provision); *Grant Fam. Farms*, 155 P.3d at 539 (same); *Pinewood Townhome Ass'n, Inc v. Auto Owners Ins. Co.*, No. 15-cv-01604-CMA-NYW, 2017 WL 590294, at *2 (D. Colo. Feb. 13, 2017) (same); *Steeplechase II Condo. Ass'n, Inc. v. Travelers Indem. Co.*, No. 17-cv-01273-PAB-NRN, 2018 WL 6571392, at *4 (D. Colo. Dec. 13, 2018) (same).

Finally, Plaintiffs contend that application of the contractual limitations period here would be unreasonable because Allstate did not deny the claim until February 2022, so a one-year limitations period "is unreasonable given the realities of filing and pursuing claims today." [Doc. 69 at 7]. While the Court acknowledges that a one-year limitations period is brief and requires a litigant to work quickly, Plaintiffs have not demonstrated that enforcing the Parties' contracted-for limitation based on these factual circumstances would be so unreasonable as to violate Colorado public policy. It is undisputed that Plaintiffs hired counsel "to represent them in the claim for benefits under the Allstate Policy" in January 2022, *before* Allstate denied the claim. [Doc. 62 at ¶¶ 13–14; Doc. 69

at 4 ¶¶ 13–14].  It is also undisputed that Allstate denied Plaintiffs' claim no later than February 18, 2022.  [Doc. 62 at ¶ 14; Doc. 69 at 4 ¶ 14].  At the time of the denial, Plaintiffs had over three months for their (already retained) attorney to file a lawsuit on their behalf. Plaintiffs do not explain why this was an insufficient period of time for their former counsel to prepare and file a Complaint, *see* [Doc. 69 at 7], and without any such argument, the Court respectfully declines to find the contractual provision void.  Because the provision does not "dilute, condition, or limit statutorily mandated coverage," *Bailey*, 255 P.3d at 1045 (quotation omitted), it is not void as against public policy based on the particular facts of this case in the record before the Court.[8]

In the alternative, Plaintiffs argue that the Policy is ambiguous and should be construed in their favor.  [Doc. 69 at 10].  They assert that the Policy states "in one place" that  "the action must be commenced within one year of the date the cause of action accrued," but inconsistently says in "another section" that the "action [must] be commenced within one year of the date of loss."  [*Id.*].  "Any ambiguity in an insurance policy is construed in favor of providing coverage to the insured."  *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005).  An insurance policy is ambiguous if, construed as a whole, "it is susceptible on its face to more than one reasonable interpretation." *Id.*

---

[8] In so ruling, this Court does not find, as a matter of law, that the Policy provision could *never* be void as against public policy.  Indeed, this Court notes the Colorado Supreme Court's recognition that insurance contracts are "unlike ordinary bilateral contracts.  The insurer usually presents the insured with a form contract drafted by the insurer, and the insured has little bargaining power in deciding whether to enter into the contract." *Gregory v. Safeco Ins. Co. of Am.*, 545 P.3d 942, 949 (Colo. 2024).  But based on the facts of this case, Plaintiff has not demonstrated that the Policy provision is void as against public policy.

The Policy here is not ambiguous and is not susceptible to more than one reasonable interpretation.  Although the Policy states that, generally, legal actions must "commence[] within one year of the date the cause of action accrues," it *immediately* qualifies that statement with a different limitations period for certain actions that are "in any way related to the existence or amount of coverage":  "However, if an action is in any way related to the existence or amount of coverage . . . under a particular coverage that is shown on the Policy Declarations, such action must be commenced within the time period specified in the **Action Against Us** provision of that particular coverage." [Doc. 62-3 at 31 (underlined emphasis added)].  And in the "Actions Against Us" section for "Part 3—Protection Against Loss To The Auto," the Policy states that legal actions must be "commenced within one year after the date of loss."  [*Id.* at 34].  This Policy language, construed as a whole, makes clear to any reader—including the average insured—that the one-year limitations provision is triggered off of the date of the loss.

It is undisputed that the loss occurred on May 30, 2021, [Doc. 62 at ¶ 1; Doc. 69 at 3 ¶ 1], and the Court has concluded as a matter of law that the Policy required that any claim for breach of contract be filed within one year after that date.  Because Plaintiffs did not file this lawsuit until February 20, 2024, [Doc. 5 at 1], their breach of contract claim is untimely.  Accordingly, the Motion for Summary Judgment is **GRANTED** as to the breach of contract claim.

### 2.    Bad Faith Claims

Under Colorado law, there are two types of insurance-based bad faith claims available to an insured party:  (1) common law bad faith and (2) unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116 (or "statutory

bad faith").  *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *4 (D. Colo. Sept. 30, 2021).  Plaintiffs raise both here, [Doc. 5 at 5–6], and Defendant seeks summary judgment on both.

### a.    Statute-of-Limitations Affirmative Defense

Allstate argues first that it is entitled to summary judgment on the bad faith claims because they are untimely based on Colorado's two-year statute of limitations for tort claims.  [Doc. 62 at 16–18].  But as Allstate concedes elsewhere, Allstate did not raise this affirmative defense in its Answer, *see* [Doc. 11]; *see also* [Doc. 58 at 2], and this Court has denied Allstate's request to amend its Answer to assert that affirmative defense, *see supra* Section I.B.

Rule 8 requires a defendant to "state in short and plain terms its defenses to each claim asserted against it," Fed. R. Civ. P. 8(b)(1)(A), and "the best procedure is to plead an affirmative defense in an answer or amended answer," *Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006).  However, the Tenth Circuit has recognized that a district court may permit a party to "constructively amend" its answer by "raising an affirmative defense in a motion for summary judgment."  *Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 884 (10th Cir. 2012).

It is not clear whether the Court must consider the propriety of constructive amendment here since it has already denied Defendant's affirmative request to amend its Answer.  But even if the Court were to consider constructive amendment—a theory not asserted by Defendant in its Motion for Summary Judgment, *see* [Doc. 62]—the Court would not permit it.  Constructive amendment is governed by "the same standards that govern motions to amend."  *Ahmad*, 435 F.3d at 1202.  For the reasons explained above,

16

Allstate unduly delayed seeking amendment in this case because it waited 16 months after receiving Plaintiffs' initial disclosures to seek leave to amend.  Undue delay is a "proper [basis]" to deny constructive amendment, *Sky Harbor Air Serv.*, 491 F. App'x at 885, and the Court will not permit Allstate to assert this untimely affirmative defense, s*ee Thomas v. Stitt*, No. 20-cv-00944-D, 2025 WL 2586072, at *5 (W.D. Okla. Sept. 5, 2025) (finding undue delay where the defendants waited until summary judgment to raise affirmative defenses); *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original [pleading], the motion to amend is subject to denial." (quotation omitted)).

### b.    Coverage Required for Bad Faith

Alternatively, Defendant contends that Plaintiffs' bad faith claims fail because there is no coverage available under the Policy.  [Doc. 62 at 18].  It asserts that "[i]f there is no coverage, there can be no unreasonable delay or denial of a claim for benefits . . . because the benefits were never owed."  [*Id.*].  Indeed, it is well-established that a claim for unreasonable delay or denial of benefits requires a showing that benefits are actually owed to the insured.  *See TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018) (to prevail on a statutory bad faith claim, the plaintiff must provide that "(1) benefits were owed under the policy; and (2) defendant unreasonably delayed or denied payment of plaintiff's claim").

However, Allstate's other argument—that if there is no coverage, "there can be no bad faith acts or omissions with [respect] to evaluating or investigating a claim for benefits," and "[h]ow Allstate acted, or failed to act when investigating, adjusting, or

17

communicating with Plaintiffs about an uncovered claim is inconsequential," [Doc. 62 at 18–19]—is incorrect.  A common law bad faith claim "encompasses the entire course of conduct" between the insured and the insurer, *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003), and the claim "exists independently from the liability imposed by the insurance contract," *Flickinger v. Ninth Dist. Prod. Credit Ass'n of Wichita*, 824 P.2d 19, 24 (Colo. App. 1991); *see also Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1235 (Colo. App. 2010) ("Colorado recognizes the viability of a [common law] claim of bad faith even if the express terms of the contract have been honored by the insurer.").  A common law bad faith claim may be viable notwithstanding a determination that there is no coverage if the claim "is based not on the denial of coverage, but on the defendant's alleged bad faith in the investigation, defense, handling, or settling of a claim.'"  *Palm v. Esurance Prop. & Cas. Ins. Co.*, No. 20-cv-02838-NYW-STV, 2023 WL 2503511, at *5 (D. Colo. Mar. 14, 2023).

Accordingly, while Allstate is correct that a determination of no coverage will be fatal to Plaintiffs' statutory claim, Allstate's argument that the common law claim is also entirely dependent on a coverage determination is not accurate.  With this in mind, the Court turns to the Parties' coverage arguments.[9]

---

[9] Allstate incorporates by reference the coverage-related arguments it asserted with respect to the breach of contract claim.  *See* [Doc. 62 at 10–14 (arguing that there is no coverage for Brianna under the Policy based on the Policy's language); *id.* at 18 ("For the reasons discussed above, there was no coverage at the time of the 2021 Collision because Brianna Alvarado was an unlisted, licensed resident driver.")].  Because the Court found that Defendant is entitled to summary judgment on the breach of contract claim on untimeliness grounds, the Court did not need to reach this Policy interpretation argument with respect to that claim.  It does so now in the context of Plaintiffs' statutory bad faith claim.

Defendant contends that there is no coverage available under the Policy because Brianna Alvarado "was an unlisted, licensed resident driver." [Doc. 62 at 18]; *see also* [*id.* at 10–14].

The Policy provides, in pertinent part, that Allstate "will not cover" any loss

> arising from a collision of **your auto**, or **your trailer** or **travel-trailer**, with another object or by upset of that **auto, trailer** or **travel-trailer** if, at the time of the loss, the **auto** was being operated by a licensed driver who was not listed on **your** Policy Declarations as a driver and who was either:
> a) a **resident**; or
> b) a guest temporarily staying in **your** home.
>
> **We** will not apply this exclusion under the following circumstances:
> a) The driver operating the **auto** became a **resident**, a guest temporarily staying in **your** home, or a licensed driver no more than 185 days prior to the loss[.]

[Doc. 62-3 at 26]. "Resident" means "a person who physically resides in **your** household with the intention to continue residence there." [*Id.* at 15].

It is undisputed that Brianna Alvarado was not listed as a driver on the Policy Declarations, [Doc. 62 at ¶ 8; Doc. 69 at 3 ¶ 8]; she resided in Plaintiffs' home from when she was a newborn through the time of the collision, [Doc. 62 at ¶ 5; Doc. 69 at 3 ¶ 5]; and she became a licensed driver on June 1, 2020, more than 185 days prior to the collision, [Doc. 62 at ¶ 20; Doc. 69 at 5 ¶ 20]. Based on these undisputed facts, Defendant argues that Brianna Alvarado is not a driver covered by the Policy. [Doc. 62 at 11].

Plaintiffs respond by invoking the doctrine of reasonable expectations, insisting that Allstate's "actions, errors, and omissions induced Plaintiffs to believe the [car] had collision and comprehensive coverage when Brianna was driving." [Doc. 69 at 10]. The doctrine of reasonable expectations "obligates insurers to clearly and adequately convey

coverage-limiting provisions to insureds." *Bailey*, 255 P.3d at 1048. It applies in two situations:

> (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue; and (2) where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable insured would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain he or she is not.

*Id.* at 1043.

Plaintiffs appear to argue that both circumstances are present here. First, they contend that an ordinary, objectively reasonable person would read the Policy and believe that Brianna was a covered driver. [Doc. 69 at 12–13]. They rely on the Policy definitions of "insured person" and "resident":

> **Insured Person** means:
> a)   While using **your insured auto**:
>   (1)   **you**;
>   (2)   any **resident**; and
>   (3)   any other person using it with **your** permission.
> b)   While using a **non-owned auto**:
>   (1)   **you**; and
>   (2)   any **resident** relative.

[Doc. 62-3 at 25]. And as already mentioned, "resident" is defined to mean "a person who physically resides in **your** household with the intention to continue residence there." [*Id.* at 15]. In Plaintiffs' view, "an ordinary person would understand Brianna to be a resident who would then qualify as an insured person for purposes of comprehensive and collision coverage." [Doc. 69 at 12].

Plaintiffs, however, do not direct the Court to any Policy language supporting their belief that an ordinary person would understand that coverage exists so long as the subject vehicle is driven by an "insured person." *See* [*id.*]. Indeed, there are no provisions

in Part 3, "Protection Against Loss To The Auto," that provide such coverage. *See* [Doc. 62-3 at 22–27]. Moreover, any confusion that could arise from the use of "insured person" is obviated by the Policy's clear statement that Allstate will not cover loss arising from a collision of the covered vehicle if the vehicle "was being operated by a licensed driver who was not listed on **your** Policy Declarations as a driver and who was . . . a **resident**." [*Id.* at 26]. The Policy lists only two drivers: Milo Alvarado and Lois Alvarado. [*Id.* at 7]. Based on this language, an objective and reasonable person would not believe that anyone who could reasonably fit within the definition of an "insured person" is automatically covered under the Policy.

"Colorado courts have [also] honored the reasonable expectations of an insured where circumstances attributable to an insurer have deceived ordinary, objectively reasonable insureds into believing that they are entitled to coverage, while the insurer would maintain they do not enjoy such coverage." *Bailey*, 255 P.3d at 1053. "In order for reasonable expectations to prevail over exclusionary policy language, an 'insured must demonstrate through extrinsic evidence that its expectation[s] of coverage [are] based on specific facts which make these expectations reasonable.'" *Id.* at 1054 (quoting *O'Neill Investigations, Inc. v. Ill. Emp. Ins. of Wausau*, 636 P.2d 1170, 1177 (Alaska 1981)) (alterations in original). "These specific facts must show that, through procedural or substantive deception attributable to the insurer, an objectively reasonable insured would have believed he or she possessed coverage later denied by an insurer." *Id.*

Plaintiffs contend that these circumstances are present here. Specifically, they state that Ms. Alvarado called Allstate when Brianna "was first able to drive a car" covered by the Policy, i.e., when Brianna "first obtained a learner['s] permit." [Doc. 69 at 11]. They

21

represent that Allstate told Ms. Alvarado that "Brianna was covered because [the Alvarados] owned the car and it had full coverage."  [*Id.*]; *see also* [Doc. 62-2 at 24:22–25 ("[T]he agent said something to the effect of [']you have nothing to worry about.  She is covered with her permit because you and your husband own the car, and it is insured with full coverage.[']")].  Plaintiffs assert that "[i]t is, if nothing else, a question for the jury as to whether Defendant[']s representatives telling Lois Alvarado that no action needed to be taken because the cars had full coverage" would lead a reasonable person "to believe they possessed coverage." [Doc. 69 at 13].

For the reasons explained below, the Court respectfully concludes that Plaintiffs have not established a genuine dispute of material fact because a reasonable jury could not find that "an ordinary, objectively reasonable insured would [have been] deceived into believing that he or she is entitled to coverage" for damages arising out of a collision involving Brianna.  *Bailey*, 255 P.3d at 1043.

As explained above, the Policy, which instructs insureds to "review [their] Policy Declarations carefully each time [they] receive one," [Doc. 62-3 at 11], clearly and unambiguously excludes coverage for property loss arising from a collision if the vehicle "was being operated by a <u>licensed driver</u> who was not listed on your Policy Declarations as a driver and who was . . . a resident." [Doc. 62-3 at 26 (emphasis altered)].  Milo Alvarado and Lois Alvarado are the only drivers listed on the Policy Declarations. [*Id.* at 7].  The Declarations further advise the insureds:

> *Are there <u>licensed drivers</u> not listed above who either reside in your household (even if temporarily away from home) or are guests staying in your home for more than 185 days?  If so, please contact us. <u>Even if you have purchased coverage for loss to your auto, trailer or travel-trailer (for example, Auto Collision Insurance) or other property, there are circumstances in which a loss to that auto, trailer, travel-trailer or other</u>

22

> property might not be covered by this policy simply because the auto was
> being operated by one of those unlisted drivers at the time of the loss.
> Details regarding this, and details regarding your policy's exclusion of any
> drivers listed below, can be found in your policy documents.

[*Id.* (emphasis altered)]. Elsewhere, the Policy imposes a duty on the insureds to promptly notify Allstate "when any resident of your household acquires a driver's license." [*Id.* at 15 (emphasis altered)].

Plaintiffs concede that Ms. Alvarado contacted Allstate when Brianna obtained her *learner's permit*, *see* [Doc. 69 at 11], and they assert that an Allstate representative told Ms. Alvarado that Brianna was "covered with her permit," [Doc. 62-2 at 24:23–24]. Plaintiffs have adduced no evidence, however, that Allstate represented to Plaintiffs that Brianna would be covered once she obtained her driver's license and became a "licensed driver." *See generally* [Doc. 69]. When viewed in conjunction with the Policy's clear language, Allstate's apparent representation to Ms. Alvarado that Brianna would be covered "with her [learner's] permit" would not have caused an objectively reasonable person to believe that Brianna was covered by the Policy after she obtained her license because (1) she was not listed as a driver on the Policy Declarations; (2) the Policy excluded coverage for resident drivers not listed on the Policy Declarations; and (3) the Policy expressly warned that unnamed licensed resident drivers may not be covered.

"[T]he doctrine of reasonable expectations does not contemplate the expansion of coverage on a general equitable basis." *Bailey*, 255 P.3d at 1054 (quotation omitted). Because Plaintiffs have not come forward with "specific facts" demonstrating "that, through procedural or substantive deception attributable to the insurer, an objectively reasonable insured would have believed he or she possessed coverage later denied by an insurer," *id.*, they have not established a genuine dispute of fact sufficient to preclude

summary judgment. The doctrine of reasonable expectations does not overcome the plain language of the Policy and does not establish coverage here.

Because there is no coverage, Plaintiffs cannot succeed on their unreasonable delay or denial claim. *See TBL Collectibles*, 285 F. Supp. 3d at 1201. The Motion for Summary Judgment is **GRANTED** with respect to Plaintiffs' statutory bad faith claim.

On the other hand, and as stated above, a common law bad faith claim can "exist[] independently from the liability imposed by the insurance contract." *Flickinger*, 824 P.2d at 24. Plaintiffs' common law claim relies in part on Allstate's alleged claims-handling conduct, *see* [Doc. 5 at ¶ 44], but Defendant does not address this portion of Plaintiffs' claim in its Motion for Summary Judgment, *see* [Doc. 62]. And Allstate's last remaining argument—that Plaintiffs have no evidence about the value of their car, *see* [*id.* at 15–16]—is simply not relevant to the portion of Plaintiffs' claim challenging Allstate's claims-handling conduct. Defendants have not demonstrated that they are entitled to summary judgment on Plaintiffs' common law claim, and the Motion for Summary Judgment is therefore **DENIED** to the extent it seeks judgment as a matter of law on this claim.

### III.    Motions to Exclude

### A.    Legal Standard

Rule 702 of the Federal Rules of Evidence states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "In essence, Rule 702 permits a court to admit expert testimony that is 'both reliable and relevant.'" *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)). The party offering expert testimony has the burden of showing its admissibility by a preponderance of the evidence. *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).

It is well established that trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony is reliable and relevant. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that gatekeeper function, the trial court first analyzes whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render their opinions. Fed. R. Evid. 702; *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019). If the expert is qualified, the trial court must determine whether the expert's opinions are reliable by assessing the underlying reasoning and methodology. *Bill Barrett Corp.*, 918 F.3d at 770. The court must also determine whether the expert's opinions are "applicable to a particular set of facts," i.e., are relevant to the case at hand. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003). This inquiry "encompasses Rule 702's requirement that the evidence help the trier of fact to understand the evidence or to determine a fact in issue." *Sanderson*, 976 F.3d at 1172 (cleaned up).

B.      Motion to Exclude Kezer

Allstate moves to exclude the opinions of John Kezer, Plaintiff's insurance industry expert. [Doc. 57]. Allstate primarily argues that Mr. Kezer's opinions improperly instruct the jury on what the law is and usurp the jury's fact-finding function. See [id. at 5–6].

Our judicial system "reserves to the trial judge the role of adjudicating the law for the benefit of the jury." Specht v. Jensen, 853 F.2d 805, 809 (10th Cir. 1988). Thus, courts routinely conclude that an expert witness "may not direct the jury's understanding of the applicable legal rights and obligations of the parties." Stoker v. State Farm Mut. Auto. Ins. Co., No. 19-cv-03569-NYW, 2021 WL 4201583, at *6 (D. Colo. May 6, 2021). Importantly, however, "simply referring to the law as part of the basis for an opinion will not render that opinion improper." EEOC v. W. Distrib. Co., 643 F. Supp. 3d 1205, 1219 (D. Colo. 2022); see also United States v. Schneider, 704 F.3d 1287, 1294 (10th Cir. 2013) (recognizing that courts "allow experts to refer to the law in expressing their opinion" (cleaned up)). "[A]n expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." Specht, 853 F.2d at 809–10. But if the expert's testimony "direct[s] the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed." Id. at 810.

Furthermore, an expert witness may not "state legal conclusions drawn by applying the law to the facts," A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25, 936 F.2d 472, 476 (10th Cir. 1991), as "such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function," O'Sullivan v. Geico Cas. Co., 233 F. Supp. 3d 917, 929 (D. Colo. 2017). In insurance cases, courts often hold that an expert may

26

not testify that an insurance company did or did not act in bad faith or did or did not act reasonably, as such opinions amount to impermissible legal conclusions. *See, e.g.*, *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F. Supp. 3d 1260, 1269 (D. Colo. 2022); *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4317112, at *10 (D. Colo. Sept. 23, 2021). Similarly, an expert may not opine that an insurance company violated the law or violated the duty of good faith and fair dealing. *O'Sullivan*, 233 F. Supp. 3d at 930; *Specht*, 853 F.2d at 808.

Even so, an industry expert may opine about whether an insurer complied with industry standards. *See George v. Metro. Prop. & Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *9, *13 (D. Colo. Jan. 2, 2020) (permitting expert to testify that insurer's conduct "did not conform with" or "departed from" insurance industry standards); *Canyon Club Condo. Owners Ass'n v. Am. Fam. Mut. Ins. Co.*, No. 18-cv-00683-DDD-STV, 2023 WL 10410009, at *4 (D. Colo. Sept. 29, 2023) (concluding that expert's opinions about whether insurer complied with industry standards "may assist the jury in its determination of whether or not the insurance claim was investigated reasonably").

Mr. Kezer's report contains six primary opinions, *see* [Doc. 57-1 at 11–17], and then concludes with seven additional options, *see* [*id.* at 20–21]. Allstate presents its arguments in an opinion-by-opinion fashion, *see* [Doc. 57 at 6–13], and the Court will do the same.

> **Opinion 1: "In my opinion, and as is supported further by the chronology of its handling of the claim as becomes even more clear when one considers my analyses and comments below, it appears that Allstate misrepresented that it would work to resolve the claim 'quickly and fairly' which did not meet or satisfy the requirements of subsection (I) of [Colorado's Unfair Claims Settlement Practices Act ('UCSPA')] cited above."**

[Doc. 57-1 at 11].

27

Allstate argues that this opinion should be excluded because Mr. Kezer "states that [the UCSPA] applies to this case," and it is "this Court's decision regarding what, if any[,] section(s) of the UCSPA apply in this case," and "[a]n expert's opinion regarding the applicable law is impermissible."  [Doc. 57 at 7].  However, it is well-established that the UCSPA can provide evidence of industry standards, *see Drake v. Amerisure Partners Ins. Co.*, No. 23-cv-01916-PAB-TPO, 2025 WL 2410284, at *5 (D. Colo. Aug. 20, 2025) (collecting cases), and the Court sees no issue with Mr. Kezer opining about industry standards (or Allstate's compliance therewith) through the lens of the UCSPA.  Mr. Kezer will not, however, be permitted to opine that Allstate violated the UCSPA.  *O'Sullivan*, 233 F. Supp. 3d at 930.  To the limited extent Mr. Kezer attempts to opine that Allstate's conduct violated the UCSPA, the Motion to Exclude Kezer is **GRANTED**.

Alternatively, Defendant contends that Mr. Kezer "does not accurately cite" the statute because the law "does not contain a subsection that states claims shall be resolved 'quickly and fairly,' so "Mr. Kezer's apparent summary of the law . . . is grossly deficient" and "misleading."  [Doc. 57 at 7].  Respectfully, this argument misstates Mr. Kezer's opinion, which clearly quotes the "quickly and fairly" language from a letter Allstate sent to Plaintiffs—not the UCSPA.  *See* [Doc. 57-1 at 11].  Mr. Kezer then opines that Allstate "misrepresented that it would work to resolve the claim 'quickly and fairly,'" which was inconsistent with Colo. Rev. Stat. § 10-3-1104(1)(h)(I).  *See* [*id.*]; *see also* Colo. Rev. Stat. § 10-3-1104(1)(h)(I) (recognizing that "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" is an unfair claim settlement practice).

28

Finally, Defendant argues that Mr. Kezer's analysis omits disputed facts that might be favorable to Allstate.  *See* [Doc. 57 at 8 (arguing that certain claim notes "do not appear to have been considered by Mr. Kezer when reaching his" opinions)].  Defendant contends that Mr. Kezer's opinion, "relying only on the facts most favorable to the Plaintiffs, is inadmissible," but it does not provide the evidentiary basis on which it believes the opinion is inadmissible.  *See* [*id.* at 8–9].  To the extent Defendant suggests that Mr. Kezer's opinions were formed based on an incomplete review of the record, the Court declines to exclude his opinions under Rule 702.  Rather, Allstate's criticisms go to the weight, not the admissibility, of his opinion.  Mr. Kezer's report states that he at minimum reviewed redacted "File Notes" produced by Allstate.  *See* [Doc. 57-1 at 12]; *see also* [*id.* at 23 (Mr. Kezer stating that he reviewed Allstate's initial disclosures and first, second, third, and fourth supplemental disclosures)].  If Allstate believes Mr. Kezer's report relies on cherry-picked facts favorable to Plaintiffs, the Court finds that this opinion is better challenged through cross-examination, not a Rule 702 motion.  Accordingly, the remainder of Opinion 1 will not be excluded.

> **Opinion 2:  "In my opinion, Allstate did not meet or satisfy the insurance industry requirement set forth in"** *Dunn v. American Family Insurance*, 251 P.3d 1232 (Colo. App. 2010).

[Doc. 57-1 at 12].

Defendant argues that this opinion should be excluded because it assumes *Dunn* "applies" in this case, but "only the Court will determine if *Dunn* applies."  [Doc. 57 at 9].  The Court respectfully disagrees.  Generally, "referencing industry standards—some of which are derived from case law—does not constitute improper legal-conclusion testimony."  *Bethel*, 596 F. Supp. 3d at 1268.  Mr. Kezer may articulate the industry

29

standard derived from caselaw.  *Schneider*, 704 F.3d at 1294 (experts may refer to the law in expressing their opinions).  Any such opinions do not necessarily amount to a legal conclusion that *Dunn* "applies" in this case.  He may not, however, provide any legal analysis or commentary regarding *Dunn.*

Allstate also argues that the opinion should be excluded because Mr. Kezer "mistakenly summarizes" the holding of *Dunn*.  [Doc. 57 at 9–10].  In his report, Mr. Kezer frames the "holding" of *Dunn* as a ruling that "every insurer has a duty to promptly and effectively communicate with anyone it was reasonably aware had or legitimately needed information pertaining to the handling of a claim."  [Doc. 57-1 at 7].  According to Allstate, *Dunn* stands for the narrower principle that an insurer has a duty "to adequately and promptly communicate in the course of investigating and handling [the insured's] claim." [Doc. 57 at 9].  The Court does not necessarily agree with Allstate's argument, as the *Dunn* court articulated the insurer's duty in a broad *and* a more specific way.  *See* 251 P.3d at 1237 ("We agree with plaintiffs . . . that defendant had a good faith duty to adequately and promptly communicate in the course of investigating and handling their claim."); *id.* at 1238 ("[W]e conclude that defendant had a duty to promptly and effectively communicate with anyone it was reasonably aware had or legitimately needed information pertaining to the handling of plaintiffs' claim.").  With that said, while Mr. Kezer may articulate insurance industry standards and present his opinions in that context, he will not be permitted to opine about whether Allstate owed any legal duty to Plaintiffs.  *See Baumann v. Am. Fam. Mut. Ins. Co.*, 836 F. Supp. 2d 1196, 1202 (D. Colo. 2011) (An opinion about whether an insurer owed a legal duty "usurp[s] the function of the trial judge to instruct the jury on the law.").  Nor will the Court permit Mr. Kezer to interpret the *Dunn*

30

case before the jury, as any such opinion would improperly "direct the jury's understanding of the applicable legal rights and obligations of the parties," *Stoker*, 2021 WL 4201583, at *6, and may ultimately confuse the jury.

Accordingly, the Motion to Exclude Kezer is **GRANTED in part** with respect to Opinion 2. The Court does not outright preclude Mr. Kezer from opining that Allstate failed to promptly or effectively communicate with Plaintiffs, but any such opinion must presented within the parameters discussed above and the Court will entertain contemporaneous objections if necessary.

> **Opinion 3: "In my opinion, and based upon the chronology of the letters themselves, Allstate did not meet or satisfy the insurance industry standards requiring a prompt investigation cited above."**

[Doc. 57-1 at 14].

Allstate's argument that this opinion should be excluded because Mr. Kezer "is not permitted to determine the applicable law or instruct the jury on its application," [Doc. 57 at 10], is unpersuasive for the reasons explained above. Mr. Kezer's reference to a statute in support of this opinion does not mean that he is attempting to instruct the jury on the law. *Schneider*, 704 F.3d at 1294.

Defendant also contends that Opinion 3 is based on nothing more than a typographical error referencing a non-existent Policy provision. [Doc. 57 at 10].[10] The Court disagrees with this reading. While Mr. Kezer's immediately following opinion (Opinion 4, discussed below), relies on that error, *see* [Doc. 57-1 at 15], Opinion 3 does not. Rather, to support his opinion that Allstate did not conduct a prompt investigation,

---

[10] Specifically, in his report, Mr. Kezer notes that Allstate's denial letter referenced a Policy section titled "Part 6—Protection Against Loss To The Auto," [Doc. 57-1 at 13–14], and that the Policy "[does] **NOT** . . . have a 'Part 6,'" [*id.* at 14].

Mr. Kezer relied on the contents of Allstate's denial letter and Allstate's purported delay in communication with Plaintiffs. *See* [*id.* at 14 ("[The letter] began with Ms. Zapata's comment about 'investigating this loss.' However, there was no explanation about what was 'investigated.'"); *id.* ("The accident occurred on May 30, 2021, and . . . it was almost a year after Mrs. Alvarado made the claim that the letter was sent. . . . Even using the last dated correspondence (July 6, 2021), it should not have taken over seven (7) months to analyze the Policy and make a determination about the coverage.")]. The Court will not exclude this opinion.

> **Opinion 4: "In my opinion, Allstate misrepresented the basis for its determination that there was no coverage for the loss to the auto based upon the fact there was no 'Part 6' in the Policy issued to the Alvarados."**
>
> **Opinion 5: "In my opinion, Allstate did not meet or satisfy these insurance industry standards."**
>
> **Opinion 6: "I leave the elements of proof about all of this to you, but, in my opinion, Allstate's Policy provided comprehensive and collision insurance for the 2012 Ford Fusion for the [collision] caused by Brianna."**

[Doc. 57-1 at 15, 17].

Allstate challenges these three opinions together on the basis that they are improper legal conclusions couched as expert opinions. It asserts that these opinions are "nothing more than [Mr. Kezer's] legal analysis of whether [the Policy] covered the subject accident." [Doc. 57 at 11–12]. First, as for Opinion 4, the Court is unpersuaded by Allstate's argument. As the Court reads Opinion 4 and its surrounding context, Mr. Kezer is opining that Allstate misrepresented the basis for its coverage determination because it cited a non-existent Policy provision in its denial letter. *See* [Doc. 57-1 at 15 (opining that Allstate misrepresented its decision "based upon the fact there was no 'Part 6' in the Policy" (emphasis added))]; *see also* [*id.* at 14 (referencing the same error)]. The Court

does not find that this limited opinion is an improper legal conclusion or attempts to interpret the Policy, so it will not exclude Opinion 4 at this time.  If, however, Mr. Kezer were to attempt to expand this opinion at trial and offer any sort of opinion regarding the proper interpretation of the Policy, such opinion would be plainly inadmissible and improper.

The Court will also not exclude Opinion 5.  As mentioned above, insurance industry experts may opine about whether an insurer did or did not comply with industry standards. *George*, 2020 WL 70424, at *9, *13; *Canyon Club*, 2023 WL 10410009, at *4.  Although Mr. Kezer cannot opine about whether Allstate violated the law or acted in bad faith, *O'Sullivan*, 233 F. Supp. 3d at 930, so long as he couches his opinion in the context of industry standards, the opinion will be permitted.

With respect to Opinion 6, however, the Court readily agrees with Defendant.  Mr. Kezer's opinion as to whether the Policy provides coverage is clearly based on his interpretation of the Policy, *see* [Doc. 57-1 at 17], and this interpretation is contrary to the Court's binding interpretation above.  Any such opinion would not only impermissibly be a legal conclusion, but it would confuse the jury by providing an incorrect statement of the law of this case.  The Motion to Exclude Kezer is **GRANTED** as to Opinion 6.

### 7.    Additional Options

Near the end of his report, Mr. Kezer states that although he had "listed a number of insurance industry standards," he had not "included opinions on all of them," so he [t]herefore, . . . add[s] the following opinions":

> [**Opinion 7**]   It didn't appear to me that Allstate met or satisfied the requirements contained in [UCSPA] subsection (II) (which required it to acknowledge and act reasonably promptly upon communications with

respect to claims arising under insurance policies) nor the NAIC Standard 2 (requiring a timely investigation to be conducted[).]

[**Opinion 8**]  I don't know if Allstate adopted reasonable standards for the prompt investigation of claims arising under insurance policies as required by subsection (III) of the UCSPA which would have been applicable to the claims, but, even if it did, there's no proof it implemented such standards.

[**Opinion 9**]  Given the circumstances, it didn't appear to me that Allstate met or satisfied the requirements of subsection (VI) of the UCSPA (which required it to attempt to negotiate in good faith to effectuate a prompt, fair, or equitable settlement of the Alvarados' claims).

[**Opinion 10**]  Although it doesn't apply directly, it appears to me that the Alvarados were forced to sue in an attempt to collect benefits due to them for the collision loss involving the 2012 Ford Fusion which, if true, would be contradictory to the insurance industry standard expressed in subsection (VII) of the UCSPA.

[**Opinion 11**]  And, if I haven't made it clear before, it appears to me that Allstate failed to provide a reasonable explanation of the basis in the Policy in relation to the applicable facts or applicable law to the Alvarados (as required by subsection (XIV) of the UCSPA[)].

[**Opinion 12**]  If one tracks the chronology of what occurred, it appears that Allstate unreasonably delayed and unreasonably denied the Alvardos' [sic] claim for coverage in violation of C.R.S. §§ 10-3-1115 and 10-3-1116.

[**Opinion 13**]  And, if one reviews the section of the book I cited above from the Institutes, it does not appear that Allstate met or satisfied the requirements for "Good-Faith Claim Handling" and, in particular, that last sentence I cited (which required an investigation to seek to discover facts and to consider all aspects of the claim in order to reach an impartial decision).

[*Id.* at 20–21].  Allstate argues that these opinions should be excluded because (1) they improperly state the UCSPA applies to this case or improperly state that Colo. Rev. Stat. §§ 10-3-1115 and -1116 apply; (2) Mr. Kezer bases his opinions on a review of "select evidence"; and (3) he does not offer any analysis as to why Allstate's conduct violated industry standards.  [Doc. 57 at 12–13].

34

The Court largely agrees with Defendant. Opinions 7, 9, and 13 are inadmissible as unreliable. In Opinion 13, Mr. Kezer broadly states that Allstate failed to comply with an earlier-referenced book's requirements for "Good-Faith Claim Handling," but fails to meaningfully explain what those requirements are or how Allstate failed to comply with them. He only directs the reader to the "last sentence [he] cited," which is a cursory statement that, in the book, "[u]nder the heading 'Unbiased Investigation[,]' the chapter includes the following: 'Investigations should seek to discover the facts and consider all aspects of the claim in order to reach an impartial decision.'" [Doc. 57-1 at 9, 21]. But Mr. Kezer does not expand on this argument or explain how Allstate failed to discover facts and/or consider all aspects of Plaintiffs' claim. Opinions 7 and 9 suffer from the same defect, as Mr. Kezer provides no explanation or supporting facts as to why Allstate violated those industry standards. The Court will exclude these opinions. *See Martin-Harker v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-00629-PAB-STV, 2025 WL 914297, at *5 (D. Colo. Mar. 26, 2025) (excluding opinion that lacked an explanation and was not "sufficiently grounded by reference to specific factual observations" (quotation omitted)).

Opinions 10 and 12 will also be excluded as irrelevant and unhelpful to the jury because the Court has determined there is no coverage under the Policy and granted Defendant summary judgment on Plaintiffs' statutory bad faith claim. Moreover, Opinion 10 improperly concludes that coverage was available under the Policy, in contravention of the Court's above analysis, and Opinion 12 improperly opines that Defendant violated the law. *O'Sullivan*, 233 F. Supp. 3d at 930.

Finally, the Court will not exclude Opinions 8 or 11. Although these opinions are not supported by a robust explanation, the Court finds that, when read in conjunction with

35

Mr. Kezer's similar, more developed opinions, they contain sufficient explanatory support.[11]  *See Conrad v. Owners Ins. Co.*, No. 20-cv-02173-KMT, 2021 WL 5280188, at *3 (D. Colo. Nov. 12, 2021) (declining to exclude opinion from Mr. Kezer that were supported by factual observations and linked to industry standards).  However, for the reasons set forth above, Mr. Kezer will not be permitted to opine that Allstate violated the UCSPA.  *O'Sullivan*, 233 F. Supp. 3d at 930.

Accordingly, the Motion to Exclude Kezer is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** with respect to Opinions 6, 7, 9, 10, 12, and 13.  It is **GRANTED in part** with respect to Opinions 1 and 2, which must be narrowly couched within the limitations discussed above.  It is **DENIED** as to Opinions 3, 4, 5, 8, and 11.

### C.    Motion to Exclude Patterson

Finally, Plaintiffs move to exclude the testimony of Defendant's claims-handling expert, Franklin Patterson.  [Doc. 63 at 1].  They argue primarily that Mr. Patterson's opinions amount to impermissible legal conclusions.  *See* [*id.* at 4–8].

The Motion to Exclude Patterson was filed on November 21, 2025.  [Doc. 63].  This Court's Civil Practice Standards state that "[u]nless otherwise ordered, all motions filed under Federal Rule of Evidence 702 . . . shall be filed no later than thirty (30) days after the deadline for disclosure of rebuttal witnesses."  NYW Civ. Practice Standard 7.1C(a).  In this case, the deadline to disclose rebuttal expert was September 19, 2025.  [Doc. 52].

---

[11] Specifically, the Court construes Opinion 8 as a continuation or restatement of Opinion 3 and Opinion 11 as a continuation or restatement of Opinion 4.  *Compare* [Doc. 57-1 at 13–14 (Opinion 3)], *with* [*id.* at 21 (Opinion 8)]; *compare* [*id.* at 14–15 (Opinion 4)], *with* [*id.* at 21 (Opinion 11)].

36

Plaintiffs' Rule 702 motion was therefore due no later than Monday, October 20, 2025. Plaintiffs' Motion is thus untimely.

Under Rule 6, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Thus, "any postdeadline extension must be 'upon motion made,'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 (1990) (emphasis omitted) (quoting Fed. R. Civ. P. 6(b)(1)(B)), and a party seeking an extension of a deadline after the deadline has expired must show both good cause to extend the deadline *and* that the deadline was missed due to excusable neglect, *Sanders v. Progressive Preferred Ins. Co.*, No. 2:21-cv-00146-JCB, 2021 WL 5770235, at *2 (D. Utah Dec. 6, 2021). Excusable neglect requires the movant to demonstrate good faith for the request and a reasonable basis for not complying within the missed deadline. *In re Four Seasons Secs. Law Litig.*, 493 F.2d 1288, 1290 (10th Cir. 1974).

Plaintiffs did not seek or obtain an extension of the Rule 702 motions deadline. Moreover, although Defendant highlights the Motion's untimeliness in its Response, *see* [Doc. 66], Plaintiffs did not file a reply brief and have never addressed the Motion's untimeliness. They have thus not demonstrated good cause to extend the Rule 702 motions deadline or that the missed deadline was due to excusable neglect. In addition, the general rule is that "[a] party may waive the right to object to evidence on *Kumho/Daubert* grounds by failing to make its objection in a timely manner." *Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1289–90 (10th Cir. 2000).

37

The Motion to Exclude Patterson is **DENIED** as untimely.  However, mindful of the Court's gatekeeper role, the Court has reviewed the Motion to Exclude Patterson. Defendant is expressly advised that, consistent with this Court's rulings on the Motion to Exclude Kezer, Mr. Patterson will **not** be permitted to opine that Allstate acted reasonably or in good faith (or that Allstate did not act in bad faith); opine about the existence of legal duties or Allstate's compliance therewith; or attempt to instruct the jury on the law. *O'Sullivan*, 233 F. Supp. 3d at 930; *Baumann*, 836 F. Supp. 2d at 1202.

### CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)     Defendant Allstate's Motion to Exclude Plaintiffs' Expert Mr. John Kezer [Doc. 57] is **GRANTED in part** and **DENIED in part**;

(2)     Defendant's Motion for Leave to Amend Answer to Add Affirmative Defense [Doc. 58] is **DENIED**;

(3)     Allstate Insurance Company's Motion for Summary Judgment [Doc. 62] is **GRANTED in part** and **DENIED in part**;

(4)     Plaintiffs' Motion to Exclude Defendants' Expert Mr. Franklin Patterson [Doc. 63] is **DENIED**; and

(5)    A Telephonic Status Conference is **SET** for **September 1, 2026 at 10:00

A.M.** to set the Final Pretrial/Trial Preparation Conference and trial in this

case.    Counsel for the Parties shall participate using the following dial-in

information:  **571-353-2301; Access Code:  783456374**.

DATED:  August 10, 2026                          BY THE COURT:

_____
Nina Y. Wang
United States District Judge